**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JERRI LYNN ORR, | | |
| Claimant, | ‖ | No. 18-CV-4097-LTS |
| vs. | ‖ | |
| ANDREW M. SAUL, | ‖ | **REPORT AND** |
| Commissioner of Social Security,[1] | ‖ | **RECOMMENDATION** |
| Defendant. | ‖ | |

_____

Plaintiff Jerri Lynn Orr ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons that follow, I recommend that the District Court **affirm** the Commissioner's decision.

## I.    BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 11) and only summarize the pertinent facts here. This is an appeal from a denial of supplemental security benefits ("SSI"). Claimant was born on September 4, 1976. (AR[2] at 264.) Claimant has a GED. (*Id.* at 174.) She allegedly became disabled due to fibromyalgia,

_____

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] "AR" cites refer to pages in the Administrative Record.

1

herniated disks, and spinal stenosis. (*Id*. at 287.) Claimant's alleged onset of disability date was March 10, 2010. (*Id*. at 264.) Claimant filed an application for SSI on October 20, 2015. (*Id*.) Claimant's claim was denied originally and on reconsideration. (*Id*. at 215-19, 223-26.) A video hearing was held on November 21, 2017 with Claimant in Sioux City, Iowa and ALJ Marc Mates in Omaha, Nebraska. (*Id*. at 13, 171-87.) Although offered the right of representation, Claimant knowingly waived her right to counsel or another representative at the hearing. (*Id*. at 171, 249.) Vocational expert ("VE") Patricia B. Ayerza appeared by phone. (*Id*. at 171.) Claimant and the VE testified. (*Id*. at 173-86.) The ALJ left the record open to obtain new records. (*Id*. at 186.) In his decision, the ALJ noted that he did not consider some evidence that was submitted after the hearing, including a letter written by Claimant, records from Dr. Nahas and Dr. Trapper, and records from Unity Point, in part because the evidence was cumulative of evidence already in the record.[3] (*Id*. 14.) The ALJ issued an unfavorable decision on May 16, 2018. (*Id*. at 13-25.)

Claimant obtained counsel and requested review of the ALJ's decision. (*Id*. at 37, 261-63.) Claimant submitted additional evidence with her request for review: April 17, 2018 treatment records from Siouxland Pain Clinic and records from Siouxland Pain Clinic, Unity Point Health, and Herbert Hartman, III, M.D. (*Id*. at 2.) The Appeals Council denied review on November 27, 2018 and refused to "exhibit" the new evidence. (*Id*. at 1-5.) The Council found that the April 17, 2018 medical records were already part of the record. (*Id*. at 2.) The Council found the second group of records did not show a reasonable probability that it would change the outcome of the decision. (*Id*.)[4]

---

[3] Claimant does not contest this decision here and did not contest this decision in her appeal to the Appeals Council (AR at 1-5), and has therefore waived any argument related to the ALJ's decision to disregard this evidence.

[4] Claimant does not appeal these decisions by the Appeals Council.

Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On December 14, 2018, Claimant timely filed her complaint in this Court. (Doc. 3.) The case was originally assigned to Chief District Court Judge Leonard T. Strand and me. On June 25, 2019, all briefing was completed. On June 26, 2019, the Honorable Leonard T. Strand referred the case to me for a Report and Recommendation.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step

five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

4

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.   The ALJ'S Findings

The ALJ made the following findings at each step of the five-step process regarding Claimant's disability status.

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since October 20, 2015, the application date. (AR at 16.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: degenerative disc disease of the lumbar spine, fibromyalgia, and obesity. (*Id.*) The ALJ evaluated Claimant's fibromyalgia under listings for related body systems

such as listing 14.09 (inflammatory arthritis) because fibromyalgia is not a listed impairment and concluded that the evidence did not establish that Claimant's fibromyalgia equaled any listing.  (*Id.*)

The ALJ found Claimant had the following non-severe impairments: vasovagal syncope, hypertension, hypothyroidism, hyperlipidemia, migraines, GERD, dysphagia, vitamin D deficiency, asthma, systolic murmur, obstructive sleep apnea, depression, and anxiety. [5]  (*Id.* at 16-18.)  In reaching these conclusions, the ALJ considered the effects of Claimant's obesity on her ability to work and perform daily activities because obesity, itself, is no longer a listed impairment.  (*Id.* at 19.)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination.  (*Id.* at 19.)

At step four, the ALJ found that Claimant had the RFC to perform sedentary work with the following additional limitations:

> She cannot climb ladders, ropes, and scaffolds, but can perform other postural maneuvers, like balancing and stooping, on an occasional basis; and she should not be exposed to hazards, like unprotected heights and dangerous, moving machinery.

(*Id.* at 19-20.)  The ALJ also found Claimant had no past relevant work.  (*Id.* at 23.)

At step five, the ALJ found there were other jobs that existed in significant numbers in the national economy that Claimant could perform, including document preparer, telemarketer, and appointment clerk.  (*Id.* at 24.)  Therefore, the ALJ concluded that Claimant was not disabled.  (*Id.* at 25.)

---

[5] The ALJ accommodated Claimant's vasovagal syncope in the RFC with preclusion from working with ladders, ropes, scaffolds, and workplace hazards.  (AR at 16-17.)  He concluded that the other nonsevere impairments were  generally controlled with treatment and that Claimant did not claim any of them were disabling. (*Id.* at 17.)

**B.     *The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III.     DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to fully and fairly develop the record at the hearing, (B) failing to properly evaluate her subjective

complaints, (C) rejecting the opinions of treating medical providers and substituting his own medical opinion as to Claimant's capacity to work, and (D) relying on a hypothetical that is not supported by the record.

**A.** ***The ALJ properly developed the record at the hearing.***

The "social security hearing is a non-adversarial hearing, and the ALJ has a duty to fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). This duty is enhanced when the claimant is not represented by counsel. *Cox v. Apfel*, 160 F.3d 1203, 1209 (8th Cir. 1998); *Carroll v. Barnhart*, No. C02-4036-MWB, 2003 WL 22246956, at *8 (N.D. Iowa Sept. 25, 2003). The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.3d 1232, 1234 (8th Cir. 1993).

Claimant argues that "[t]he transcript of the hearing was held on AR pages 169-188. Pages 174-182 are the testimony of the Plaintiff and pages 182-186 are the examination of the VE. The testimony was not a very in depth examination of either." (Doc. 12 at 5.) At the hearing, the ALJ gave Claimant the opportunity to tell him anything she wanted him to know that the ALJ did not ask about. (*Id.* at 181.) Claimant was also given the opportunity to ask the ALJ questions. (*Id.* at 186.) Moreover, the ALJ held the record open to obtain missing medical records before he rendered his decision. (*Id.* at 186-87.)

Although the length of a hearing is not determinative as to whether the record was sufficiently developed, it is a consideration. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (finding the record not sufficiently developed when the hearing took ten minutes, the ALJ asked no questions, and the claimant's counsel asked no questions related to claimant's capacity to work) (citation omitted). In this case, the ALJ asked Claimant questions related to her capacity to work and her impairments, let her ask him questions,

and left the record open to obtain medical records. (AR at 174-82, 186-87.) Claimant does not assert that any evidence is missing from the record, does not proffer any questions that the ALJ should have asked or testimony the ALJ should have solicited, or assert that she was precluded from testifying about any issues at the hearing. Therefore, Claimant does not argue that she was prejudiced by how the ALJ developed the record. *See Onstad*, 999 F.3d at 1234. Accordingly, I find that the ALJ properly developed the hearing record. *See Moore*, 572 F.3d at 522.

**B.      The ALJ properly evaluated Claimant's subjective complaints.**

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4). This determination involves a two-step process in which the ALJ first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then evaluates the intensity and persistence of the claimant's symptoms. *Id.* § 404.1529(b),(c). When evaluating the claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) [the claimant's] functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3).[6] An ALJ is not

---

[6] The Code of Federal Regulations includes the additional factors of: (1) other treatment the claimant receives for pain relief; and (2) measures the claimant uses to relieve pain "(e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3)(v), (vi).

9

required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (*citing Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. *Id.* § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

After quoting part of the ALJ's opinion related to Claimant's daily activities, Claimant cites AR 21 where the ALJ acknowledges "there have been abnormalities on physical examinations at times, including decreased range of motion of the lumbar spine . . . , tenderness in the lumbar spine . . . antalgic gait, . . . diffuse tenderness consistent with fibromyalgia. . . . [and] the claimant is noted to be in 'moderate' distress and to appear uncomfortable on rare occasions." (Doc. 12 at 10-11 (citing AR at 21).) However, as Claimant acknowledges, the ALJ goes on to state there are times when Claimant is better. (*Id.* at 10-11.) Claimant asserts that the ALJ "seems to be acknowledging that [Claimant] has good days and bad days as reflected in the medical records." (*Id.* at 11 (citing AR at 22).)

> This is true. The ALJ continued by stating the following:
>
> However, the record generally demonstrates normal findings, with consistent notations that she is in no acute distress, even when she rates her pain level at 10 on a scale of l to 10 (Exhibits lF/11; 3F/2, 5, 8, 15, 21, 27, 30, 33, 39, 45; 8F/8; 9F/6, 9; 12F/3, 7, 17; 13F/5, 14, 22, 28, 33; 17F/l). She has full strength and no neurological deficits (Exhibits l F/3,11; 8F/2, 8; l0F/3; 12F/3, 7, 17; BF/28), and she is noted to have negative

straight leg testing, a normal gait, and normal range of motion in the spine (Exhibits lF/3; 3F/27, 39; 8F/8; 12F/3). Imaging of the lumbar spine in 2015 demonstrated some moderate degenerative disc disease at L4-5, mild L5-Sl foraminal stenosis, and mild spinal stenosis at L3-4 (Exhibit 3F/19, 25). A more recent MRI in August 2016 demonstrated postsurgical changes, with no evidence of a disc protrusion, a small disc bulge at L4-5, and a small right central and subarticular disc extrusion migrating inferiorly and abutting the traversing L5 nerve, resulting in possible impingement (Exhibit 12F/8).

(AR at 22.)

Claimant then argues that even though she is able to perform some daily activities "on a restricted basis, there is really no analysis by the ALJ regarding her good days, bad days and there [sic] effect on her ability to work." (Doc. 12 at 11.) She further asserts that the ALJ cannot rely on a claimant's ability to engage in personal activities such as cooking, cleaning, or hobbies to constitute substantial evidence that she has the RFC to engage in substantial gainful activity. (*Id.* (citations omitted).)

I find that the ALJ did not solely rely on Claimant's ability to engage in daily activities to make his decision. In fact, while the ALJ did enumerate the many activities Claimant was able to do in a day, he then stated the following:

While the claimant's ability to engage in these ordinary life activities is not itself conclusive proof that she is also able to engage in substantial gainful activity, her capacity to perform these tasks independently is a strong indication that she retains the capacity to perform the requisite physical and mental tasks that are part of everyday, basic, work activity. That indication is further supported by the objective medical signs and findings discussed in more detail below.

(AR at 20.) The ALJ then went on to analyze the objective medical evidence and treatment notes in the record. The ALJ noted that Claimant did not complain of back pain until January 2015 when she felt a pop in her low back. (*Id.*) Claimant experienced little pain relief until April 2015, when she experienced pain relief with medication. (*Id.*

at 363-66.) Treatment for Claimant's back issues culminated with a bilateral L4 partial laminectomy and L4-5 discectomy on March 14, 2016. (*Id.* at 469.) Two weeks post-surgery, Claimant was doing quite well, with only a bit of tingling down her legs, "but nothing like she had before." (*Id.* at 467.) She was continued on lifting and twisting restrictions. (*Id.*) On May 16, 2016, Claimant was released for normal activities with no restrictions. (*Id.* at 493.) Her strength was 5/5, she was "doing quite well," and had "a little bit of radicular pain down the leg but nothing like it was before, [and was] a little tender in the left trochanteric area." (*Id.*) Claimant began physical therapy in June 2016, because she was still experiencing back pain and was given a TENS unit in September 2016. (*Id.* at 516, 527.) Claimant was discharged from physical therapy on September 27, 2016 for being a "no show." (*Id.* at 513.) She had made little progress on her therapy goal of reducing her pain and had not been to formal physical therapy for over a month. (*Id.* at 513, 521.) In April 2018, Claimant presented to the Siouxland Pain Clinic, stating that her back pain was worse than it had been before her back surgery. (*Id.* at 585.) The nurse practitioner who treated Claimant that day noted that she did not appear uncomfortable or in any acute distress in spite of rating her pain at 8/10. (*Id.*)

The ALJ went on to analyze the objective medical evidence referenced above. I have read all of the treatment notes cited by the ALJ and find that they support the findings for which he cited them. Indeed, Claimant does not argue otherwise.

The ALJ cited extensively to the medical evidence in the record to support his conclusions. (*Id.* at 17-18, 20-23.) The ALJ relied upon not only Claimant's ability to cook simple meals; shop; drive; do laundry; wash dishes; care for her son; and perform personal care tasks independently, although these tasks take Claimant longer to complete than they used to. (*Id.*) The ALJ also relied on the objective medical evidence, the opinion evidence, and hearing testimony. (*Id.*) Accordingly, I find that the ALJ properly

considered and evaluated Claimant's daily activities, but did not base his entire decision regarding Claimant's RFC on his evaluation of Claimant's daily activities.

Moreover, to the extent Claimant argues having good days and bad days should justify a finding of disability in this case, I find that it does not. For example, in *Ross v. Apfel*, the claimant had sickle cell anemia that caused him severe pain and fatigue. 218 F.3d 884, 847 (8th Cir. 2000). He napped at least once every day and he took multiple naps on more than half the days. *Id.* at 849. In spite of that, on his "three or four" good days a week, the claimant rated his pain at a three or four and could do some household chores and yardwork, although slowly and with frequent breaks. *Id.* at 849. However, on the days when his pain was most severe, usually two days a week, he rated his pain at a ten, took medication, and stayed in bed. *Id.* at 847, 849. On the worst days, he went to the emergency room. *Id.* at 849. Claimant's testimony was corroborated by objective medical evidence and testimony from other witnesses. *Id.* at 849-50. The Eighth Circuit found the claimant disabled because he could not maintain the attendance requirements of full time competitive employment. *Id.* at 850.

In the case at bar, Claimant does housework every day, prepares simple meals every day, drives, visits her father and takes him to his doctor appointments, attends her own doctor appointments without assistance, and visits with relatives multiple times a week. In spite of saying that tasks take longer than they once did, she never spends entire days in bed due to pain or fatigue. Thus, this case can be distinguished from *Ross* where the claimant's bad days precluded him from engaging in full time work. In addition, Claimant had generally normal findings on examination and physicians noted she appeared in "no acute distress," even when she stated she had a pain rating of 10/10. (AR at 22 (citing multiple pages in the record supporting this finding).) Claimant also had full strength, no neurological defects, negative straight leg testing, and normal gait, and range of motion of the spine during examination. (*Id.* (same).) Thus, while Claimant

need not be bedridden to be considered disabled, *see Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005), the record as a whole supports the ALJ's conclusion. Therefore, the ALJ's decision was not outside the available zone of choice within which he could decide this issue. *See Hacker*, 459 F.3d at 936.

**C.** **The ALJ did not reject the opinions of treating medical providers and rely on his own medical opinions as to Claimant's capacity to perform work.**

The ALJ must determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

"Because [a] claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* (citing *Myers*, 721 F.3d at 526-27) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)); *Martin v. Berryhill*, No. 1:18-CV-00004 JM/PSH, 2019 WL 138655, at *6 (E.D. Ark. Jan. 8, 2019) (explaining that "the ALJ must weigh the various medical opinions in the record") (citation omitted), *R. & R. adopted*, 2019 WL 334202 (E.D. Ark. Jan. 25, 2019). "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and

14

laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p.

After a synopsis of how the ALJ weighed the medical evidence, including snippets of argument, which will be discussed below, Claimant stated, "[t]he decision itself is not even supported by any medical evidence. . . . The ALJ's opinion was substituted for those of the treating physicians and medical records contained in the file." (Doc. 12 at 7-8.) Perhaps unsure how to respond to Claimant's amorphous argument, the Commissioner systematically addressed every medical opinion in the record and discussed support for the ALJ's decision on the record as a whole. (Doc. 13 at 8-19.)

Claimant is correct that "[a]n administrative law judge may not draw upon his own inferences from medical reports." (Doc. 12 at 8) (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). However, in this case, the ALJ did not do so. In *Nevland*, there was no medical evidence of how the claimant's impairments affected his ability to function. 204 F.3d at 858. In the case at bar, the ALJ relied on extensive treatment notes, and the opinions of four state agency medical consults, a consulting psychologist, and—contrary to Claimant's argument—Claimant's chiropractor and Claimant's rheumatologist to render his decision. Although the ALJ gave Claimant's chiropractor's opinion only little weight because chiropractors are not acceptable medical sources under the regulations, he did not discount the opinion as Claimant seems to aver. Likewise, the ALJ gave the single-sentence opinion of Claimant's rheumatologist Joseph Nahas. M.D., that "[i]t is [his] professional medical opinion that Jerri Orr has fibromyalgia and this is life long" weight, but not great weight because it does not include any function-by-function limitations regarding Claimant's ability to perform activities. (AR at 22.)

Although Claimant does not take issue with the weight the ALJ gave to any particular opinion, Claimant proffers the following arguments related to how the ALJ addressed the individual medical opinions in this case.

"The ALJ accepts the opinion of the state doctors. . . . But even second guess [sic] them as to lifting, carrying, ladders and hazards." (Doc. 12 at 8.) The ALJ gave the opinions of the State Agency Medical Consultants great weight because State agency consultants are familiar with the standards used to assess disability in Social Security cases and because their findings were consistent with the substantial evidence in the record. (AR at 22.) However, based on evidence received at the hearing, the ALJ further limited Claimant's ability to climb ladders, ropes, and scaffolds, reduced her ability to lift and carry, and precluded exposure to hazards. (*Id.*) I find that the ALJ's added limitation was appropriate and based on substantial evidence. Further, I, like the Commissioner, am confused by Claimant's argument. As the Commissioner queries,

> The Commissioner is uncertain what plaintiff's point is. She appealed her case to the ALJ because she disagreed with the agency's determinations at the initial and reconsideration levels, which were based on Dr. May's and Dr. Daly's medical opinions (Tr. 228). The ALJ consideration of additional evidence to find greater limitations than Dr. May and Dr. Daly opined represents a proper evaluation of the record.

(Doc. 13 at 11.) The Commissioner is correct. The ALJ properly evaluated the record and added restrictions based on newly-acquired information.

Claimant also takes issue with ALJ's statement that Dr. Nahas's statement "does not include any function-by-function limitations in [sic] the claimant's ability to perform any activities. As such, it is not a medical opinion and not entitled to great weight." (AR at 23.) Claimant argues, "Not a medical opinion? How does the ALJ state it is not a medical opinion? The doctor states it is his professional medical opinion." (Doc. 12 at 7.) Claimant misses the point. The ALJ merely stated that the statement did not contain any functional limitations regarding Claimant's ability to perform work-related activities. This is true. This was not something the ALJ weighed or decided. Dr. Nahas's statement is devoid of functional limitations. Furthermore, no one is challenging Claimant's

fibromyalgia diagnosis. The diagnosis is well-documented in her medical records and the ALJ found fibromyalgia to be a severe impairment. (AR at 16.) For purposes of crafting Claimant's RFC, however, a medical opinion is most useful if it contains functional limitations information. Here, Dr. Nahas's opinion gave the ALJ no guidance regarding lifting, walking, sitting, or any other functional limitations that the ALJ could incorporate into his RFC.

Dr. G. L. Trapper, Claimant's chiropractor, submitted two statements, one on November 18, 2015[7] and one on April 16, 2018. (*Id.* at 452-53, 584.) In the 2018 opinion, Dr. Tapper opined, in part, that Claimant would be limited to lifting five pounds "and not on a very limited basis," that she would be unable to sit or walk for extended periods of time, and that due to her daily back pain, "it would be difficult for [Claimant] to find employment." (*Id.* at 584-55.) The ALJ gave these opinions little weight because chiropractors are not acceptable medical sources under the regulations. (*Id.* at 23.) The ALJ went on to state that he considered Dr. Trapper's opinions regarding the severity of Claimant's impairments and resulting limitations and found they were not supported by the record that generally showed only mild abnormalities.[8] (*Id.*) Claimant argues that

---

[7] This opinion is based, at least in part, on the findings of a March 9, 2015 MRI. (AR at 452.) At that time, Dr. Tapper opined that Claimant "may require low back surgery in the future." (*Id.* at 453.) Claimant had surgery on March 14, 2016. (*Id.* at 469.) Therefore, this opinion is mostly moot and the 2018 opinion is the most relevant opinion.

[8] The ALJ stated that Dr. Trapper's opinions were also not supported "by his own records." (AR 23.) There are no medical records from Dr. Trapper in the administrative record. The item the table contents identifies as office treatment records is Dr. Trapper's November 18, 2015 opinion. (*Id.* at 452-53.) Claimant does not take issue with this aspect of the ALJ's decision and therefore has waived any argument based on this issue. *See Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010) (noting that district court opined that although the claimant "discussed the Record at some length, he has not alleged any of the ALJ's findings regarding his physical capabilities or the effects of depression were erroneous" and holding that any arguments not properly raised at the district court level are waived on appeal) (citing *Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Novotny v. Chater*, 72 F.3d 669, 670 (8th Cir.1995)). Moreover, as

Dr. Tapper's opinions "support the testimony of [Claimant] as to her back pain and her desire to get relief from it." (Doc. 12 at 7.)

Medical sources who are not acceptable medical sources are considered "other sources." 20 C.F.R. § 416.927(f). Generally, the opinions of acceptable medical sources are given more weight than opinions of other sources. *See* SSR 06-03p. "In determining what weight to give 'other medical [source] evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Peterson v. Colvin*, No. C14-4110-LTS, 2016 WL 1611480, at *6 (N.D. Iowa Apr. 21, 2016) (quoting *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005)). Here, the ALJ determined that Dr. Tapper's opinion was not supported by the record evidence as a whole. (AR at 23.) The ALJ concluded that the record did not support the alleged severity of Claimant's symptoms. (*Id.* at 20-23.)

I have already concluded that the ALJ properly evaluated Claimant's subjective complaints. Furthermore, the ALJ had more discretion to evaluate Dr. Tapper's opinion because Dr. Tapper was not an acceptable medical source. Dr. Tapper's opinion contained limitations that were not supported by the evidence in the records as a whole. For example, two weeks after her laminectomy surgery, Claimant's lifting restriction was only fifteen pounds—three times the weight limit Dr. Tapper included in his opinion. (*Id.* at 467.) Therefore, the fact that Dr. Tapper's opinions are in concert with Claimant's hearing testimony is not dispositive. The ALJ made a decision that was within the scope of his authority and it is supported by the record as a whole. *See Hacker*, 459 F.3d at 936.

---

discussed above, the ALJ's decision regarding the weight assigned Dr. Tanner's opinions is supported by substantial evidence in the record as a whole.

18

The ALJ gave significant weight to the opinions of the state agency consultants who reviewed the record in this case, including the consulting psychologist. (AR at 22.) State agency consulting psychologist Michael P. Baker, Ph.D., examined Claimant on January 21, 2016. (*Id.* at 454-56.) Dr. Baker reached the following conclusions related to Claimant's ability to work:

> In regards to mental imitations related to work activities, client has the ability it would seem to remember and understand instructions, procedures, and locations. During mental status she demonstrated adequate maintenance of attention, concentration, and pace. Her pain difficulties throughout the day, however, may certainly affect sustained work for attention and concentration as well as pace. She interacted appropriately during the session and by history probably does so reasonably well for interacting with supervisors, coworkers, and the public. There is not reason to expect good judgment and ability to respond appropriately in the work place would not take place.

(*Id.* at 456.) Claimant argues that "the ALJ rejected Dr. Baker's opinions for being subjective complaints and being outside his specialization as a psychologist. Yet as a psychologist he does measure a person's ability to maintain attention, concentration and pace." (Doc. 14 at 2.)

Claimant is confusing the Commissioner's pre-emptive argument regarding Dr. Baker's statement that pain might affect Claimant's concentration, persistence, and pace with the ALJ's decision. The ALJ never cited this part of Dr. Baker's opinion. In his brief, the Commissioner acknowledged that Claimant had not proffered an argument related to Dr. Baker's opinion, but assumed that Claimant might proffer an argument related to how Claimant's pain might affect her ability to concentrate and maintain attention and pace.[9] (Doc. 13 at 19.)

---

[9] Claimant makes such an argument related to the hypothetical posed by the ALJ. (Doc. 12 at 13.)

Regardless of where the argument originated, I find that the statement regarding pain possibly limiting Claimant's concentration, persistence, and pace is not supported by the record as a whole. While it is true that psychologists measure cognitive abilities, they do not measure pain. As discussed above, the ALJ's decision that Claimant's alleged subjective complaints were not as severe as she claimed is supported by the record. Moreover, Dr. Baker is a licensed psychologist, not a medical doctor, and is therefore not competent to opine on Claimant's physical impairments. Importantly, Dr. Baker, himself noted only that Claimant "Reports Fibromyalgia and pain problems—Defer to physician." (*Id.* at 456.) Therefore, Dr. Baker did not claim to be qualified to render an opinion regarding Claimant's pain. Dr. Baker stated that during his examination, Claimant's attention, concentration, and pace were adequate. (*Id.*) Therefore, I agree with the ALJ that Dr. Baker found Claimant had no significant limitations in mental functioning. (*Id.* at 18.)

Claimant does not make any specific argument regarding the little weight assigned to Claimant's post-surgical restrictions from March and April 2016. Claimant, however, does state that the ALJ labels the restrictions "temporary." (Doc. 12 at 7.) The ALJ called the restrictions "temporary" because they were temporary. (AR at 467.) By June 2106, Claimant was released to resume her usual activities with no restrictions. (*Id.* at 493.)

The ALJ gave all these opinions some weight. In addition, he relied not only on them, but also on medical treatment notes, radiographic imaging, Claimant's daily activities, and testimony to support his decision. (*Id.* at 17 (citing to the record to support Claimant's mental RFC), 20-22 (citing to the record to support Claimant's physical RFC), 22-23 (weighing the opinion evidence).) Claimant cites no evidence in the record that allegedly contradicts the ALJ's decision other than her own testimony. (Doc. 12 at 7

(citing AR 175-76).)  After reviewing the evidence in the record and the evidence cited by the ALJ, I find that the ALJ's decision is supported by substantial evidence on the record as a whole.

**D.    *The ALJ relied on a hypothetical that was supported by the record.***

Claimant argues that the hypothetical questions the ALJ asked the VE were deficient because they assumed Claimant could perform sedentary work.  Claimant avers this assumption ignored that Claimant had good days and bad days and chronic back pain. Moreover, she asserts it assumes she can lift ten pounds and sit or stand for long periods of time.  In addition, Claimant argues that the RFC ignores Dr. Baker's conclusion that she "is not able to work with regard to her pain difficulties throughout the day may certainly affect sustained work for attention and concentration as well as pace."  (Doc. 12 at 13.)

"Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quoting *Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994)).  However, a hypothetical only needs to include the impairments that are supported by the record and that the ALJ accepts as valid.  *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1015 (8th Cir. 2000)).

In the case at bar, the first hypothetical the ALJ proffered to the VE became the RFC in this case:

> I'm going to ask you to assume someone of Ms. Orr's age, education, work experience.  I'm going to ask you to assume that this person is limited to sedentary work, which generally  involves lifting and carrying no more than ten pounds occasionally, less than ten frequently; sitting six or more hours in an eight hour workday; standing and walking could be done up to two hours in an eight hour workday.  No ladder, rope or scaffold climbing; other cautionable activities like balancing and stooping could be done on an

occasional basis; no hazards in terms of unprotected heights or dangerous moving machinery.

(AR at 183-84.)

First, the ALJ did not ignore Claimant's chronic pain because he found Claimant's fibromyalgia and degenerative disc disease to be a severe impairments.  Fibromyalgia is a disorder characterized by, among other things, widespread musculoskeletal pain.[10] Second, the ALJ did not necessarily ignore that Claimant has good days and bad days. The ALJ was not required to cite every piece of evidence in the record.  *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)) (an ALJ is not required to discuss every piece of evidence submitted). Importantly, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  *Id.* (alteration in original).  Third, the ALJ acknowledged and thoroughly evaluated Claimant's allegations of pain.  (AR at 19-23.)  As discussed above, the ALJ properly concluded that substantial evidence did not support allegations of pain that were as severe as Claimant claimed, not that the record supported a finding of no pain.  *See Guilliams*, 393 F.3d 801 (RFC is what the claimant can still do despite his or her limitations).  Finally, as previously discussed, Dr. Baker opined that Claimant had the mental RFC to succeed in a work environment.  (AR at 456.)  Dr. Baker is not a physician or other healthcare professional who treats medical problems, he was responding purely to Claimant's self-reports regarding her pain, and Dr. Baker, himself, stated that deferring to Claimant's physician regarding pain issues was the proper professional course of action.  (*Id.*)

Because the hypothetical the ALJ proffered was based on findings that were supported by substantial evidence in the record as a whole, I find that the hypothetical was also

---

[10]    Mayo Clinic, Fibromyalgia, https://www.mayoclinic.org/diseases-conditions/ fibromyalgia/symptoms-causes/syc-20354780.

supported by the record.[11] *See Moore*, 572 F.3d at 522 (the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

## IV.  CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm** the decision of the ALJ and **dismiss Plaintiff's case with prejudice**.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 14th day of February, 2020.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

---

[11] Claimant does not take issue with the jobs cited by the VE in response to the hypothetical.